IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>RICK ENGSTRUM,<br><br>Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING MOTION TO<br>DISMISS INDICTMENT<br><br><br><br><br>Case No. 2:08-CR-430 TS |

This matter is before the Court on Defendant's Motion to Dismiss Indictment, filed December 18, 2008.[1] Defendant was charged in the Indictment with one count of Possession of a Firearm following a Domestic Violence Conviction, in violation of 18 U.S.C. § 922(g)(9).[2] Defendant argues that the statute, *as applied*, is unconstitutional because it impermissibly infringes on his Second Amendment right to keep and bear arms. The government argues that Defendant's claim is "without merit"[3] because § 922(g)(9) has never been found to impermissibly burden Second Amendment rights under any form of heightened scrutiny. Because the Court finds that § 922(g)(9),

---

[1]Docket No. 17.

[2]Docket No. 1.

[3]Docket No. 19 at 1.

as applied to this defendant, is narrowly tailored to a compelling government interest, Defendant's Motion will be denied.

## I.  FACTUAL BACKGROUND

The following facts are taken from the government's Memorandum in Opposition.[4] Defendant and his girlfriend (the "Girlfriend") were residing at a home in West Valley City, Utah (the "Residence") on May 9, 2008.  On that day, Defendant and the Girlfriend got into an argument and the Girlfriend left the Residence.

On May 10, 2008, the Girlfriend returned with the police to retrieve her personal belongings, but no one answered the door when the Girlfriend knocked.  Later that day, she returned with a friend (the "Friend"), in another attempt to retrieve her belongings.  The Friend remained outside while the Girlfriend entered the Residence. While the Girlfriend was inside, she and Defendant got into another argument.  During that argument, Defendant told the Girlfriend that she could not have her personal belongings if she left him and he grabbed her arm.  The Girlfriend claimed she feared for her safety[5] and so pulled a can of mace out of her back pocket and attempted to spray the Defendant.  The mace did not work for the Girlfriend, but Defendant took the pepper spray from the Girlfriend and turned it on her.  The Girlfriend then left the Residence and the Friend called the police.  Before police arrived, Defendant threw the Girlfriend's belongings out of the Residence.

When police arrived at the Residence, the Girlfriend informed police that Defendant kept a gun in his bedroom, although the gun was never used or displayed in any way by the Defendant prior

---

[4]Docket No. 18.

[5]No evidence or allegations have been presented to the Court to indicate why the Girlfriend feared for her safety.  Likewise, there are no allegations that Defendant did anything other than grab the Girlfriend's arm.

to the police arriving.  Defendant allowed the police to enter the Residence, where one officer noticed an unspent round on the floor of the Residence.  When officers inquired about the gun, Defendant advised them that it was in his bedroom dresser drawer, and that he had unloaded it when he learned that law enforcement would be arriving at the Residence.  The officers found the unloaded gun from the bedroom dresser drawer.  The gun was not taken from the Residence at that time.

On May 22, 2008, West Valley Police contacted Defendant and inquired about the gun. Defendant indicated that he owned the gun and that it was a gift from his father.  There is no evidence to indicate that Defendant had ever used the firearm.  However, Defendant was advised that he could not have a gun due to a prior misdemeanor domestic violence conviction.  Defendant indicated to police that he would surrender the gun and ammunition.  Police arrived at the Residence later that day and Defendant signed a consent to search form and surrendered the gun and ammunition.

Facts raised by Defendant, and undisputed by the government,[6] also show that the firearm was purchased by Defendant's father, the prior owner of the Residence.  Defendant's father utilized the firearm for lawful purposes, and kept the firearm near his bed for home protection.  Defendant came into possession of the firearm after Defendant's father passed away and Defendant came to live in the Residence.

---

[6]*See United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) (holding that facts outside the four corners of the indictment may be considered on a motion to dismiss if the government fails to object to their consideration).

## II.  STANDARD OF REVIEW

A facially valid indictment, returned by a legally constituted and unbiased grand jury, is enough to call for a trial on the merits.[7]  Thus, pretrial dismissal of an indictment is a "rare exception,"[8] appropriate only in rare circumstances, where the Court is able to make "a determination that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt."[9]  When presented with a motion to dismiss the indictment, "the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."[10]

## III.  DISCUSSION

Defendant argues in his Motion that he could not have committed the crime for which he is charged because, "under the circumstances he possessed the firearm, he had an absolute right to do so under the Second Amendment to the United States Constitution."  Defendant does not make a facial challenge to 18 U.S.C. § 922(g)(9), and concedes, for the purposes of this Motion, that "he is a person otherwise covered by 18 U.S.C. § 922(g)(9)."[11] Defendant argues, however, that the statute impermissibly burdens his Second Amendment right to keep and bear arms by punishing him for

---

[7]*Costello v. United States*, 350 U.S. 359, 363 (1956).

[8]*Hall*, 20 F.3d at 1088.

[9]*Id.*

[10]*United States v. Sampson*, 371 U.S. 75, 78-79 (1962).  *See also United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) ("an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.").

[11]Docket No. 18 at 5.

maintaining a firearm in the Residence solely for the purpose of home defense.  The government argues that dismissal of the indictment is improper because Defendant has conceded, for the purposes of this Motion, that he covered by § 922(g)(9), and because application of *Heller* does not require exceptions to be made to § 922(g)(9).

In order to succeed, Defendant must show that application of *Heller* to the facts of this case requires a finding that Defendant's Second Amendment rights are impermissibly burdened by denying Defendant the right to maintain a firearm within the Residence for the sole purpose of home defense.

A.       SECOND AMENDMENT RIGHTS

The Supreme Court recently clarified the meaning of the Second Amendment in *District of Columbia v. Heller*.[12]  Defendant argues that the United States Supreme Court, in *Heller*, established that the right to keep and bear arms is an "absolute"[13] right guaranteed to each individual by the United States Constitution.  The government responds that the *Heller* Court did not declare the right to be absolute, but rather that it was "subject to reasonable restrictions."[14]  Both arguments are incorrect.

In *Heller*, the Supreme Court invalidated two District of Columbia laws, the first of which banned all handguns, and the second required that all long guns be kept inoperative, either through disassembly or through a trigger lock.[15]  In striking down those laws, the Court held that the Second

---

[12]128 S.Ct. 2783 (2008).

[13]Docket No. 18 at 4.

[14]Docket No. 19 at 6.

[15]*Heller*, 128 S.Ct. at 2821-22.

5

Amendment protected a long-standing individual right to keep and bear arms.[16]  According to the

Supreme Court, the constitutional protection of that right was intended to protect a well-regulated

militia, but the right itself was a well-established right to self- and home-preservation and defense.[17]

Moreover, the *Heller* Court declared that the right is a fundamental right,[18] although not an unlimited

one.[19]  The proper question, then, is not whether Defendant has a fundamental right to keep and bear

arms, but whether the restrictions placed on this Defendant's fundamental right by 18 U.S.C. §

922(g)(9) are constitutional.

B.    LEVEL OF SCRUTINY

        Before analyzing whether § 922(g)(9) is constitutional, as applied to Defendant, the Court

must determine the appropriate level of scrutiny to apply.  Unfortunately, the *Heller* Court rejected

calls to specify a precise test by which alleged violations of the Second Amendment were to be

judged.[20]  However, the *Heller* Court expressly rejected the application of the rational basis test,[21]

---

        [16]*Id.* at 2797-98 ("[W]e find that [the Second Amendment] guarantee[s] the individual
right to possess weapons in case of confrontation.").

        [17]*Id.* at 2798 ("By the time of the founding, the right to have arms had become
fundamental for English Subjects.").  *See also* 1 Blackstone 136, 139-40 (referencing "the natural
right of resistance and self-preservation" and "the right of having and using arms for self-
preservation and defense."); 2 Tucker's Blackstone 143 ("The right to self-defence is the first law
of nature . . . .").

        [18]*Heller*, 128 S.Ct. at 2798 ("By the time of the founding, the right to have arms had
become fundamental for English subjects").

        [19]*Id.* at 2799 ("Of course the right [conferred by the Second Amendment] was not
unlimited, just as the First Amendment's right of free speech was not.").

        [20]*See*, *e.g.*, *id.* at 2869 (Breyer, J., dissenting).

        [21]*Id.* at 2817 n.27 ("Obviously, the [rational basis] test could not be used to evaluate the
extent to which a legislature may regulate a specific, enumerated right, be it the freedom of
speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear

as well as the "interest-balancing inquiry" suggested by Justice Breyer.[22]  Justice Breyer suggested that courts ought to inquire "whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other governmental interests."[23]  The majority responded: "We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach.  The very enumeration of the right takes out of the hands of government–even the Third Branch of Government–the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."[24]

Relevant to the present case, the *Heller* Court also indicated that certain existing restrictions on Second Amendment rights were presumptively lawful.  "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."[25]

Although not expressly stated by the *Heller* Court, strict scrutiny appears the appropriate level of scrutiny for two reasons.  First, the *Heller* Court described the right to keep and bear arms

---

arms.").

[22]*Id.* at 2821.

[23]*Id.* at 2852 (Breyer, J., dissenting).

[24]*Id.* at 2821 (emphasis in original).

[25]*Id.* at 2816-17.

as a fundamental right that the Second Amendment was intended to protect.[26]  The Tenth Circuit has

declared that, where fundamental rights are at stake, strict scrutiny is to be applied.[27]  Second, the

*Heller* Court categorized Second Amendment rights with other fundamental rights which are

analyzed under strict scrutiny.[28]  The Court will, therefore, apply strict scrutiny analysis to the

application of § 922(g)(9) to Defendant, and require that the government show that § 922(g)(9) is

narrowly tailored to serve a compelling government interest, as applied to the facts of this case.[29]

C.      APPLYING STRICT SCRUTINY TO § 922(g)(9)

        Defendant has been charged with a violation of 18 U.S.C. § 922(g)(9), which makes it

unlawful to possess a firearm if the individual "has been convicted in any court of a misdemeanor

crime of domestic violence."  The term "misdemeanor crime of domestic violence" is defined in 18

U.S.C. 921(a)(33)(A) as:

>       an offense that–(i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has,
>       as an element, the use or attempted use of physical force, or the threatened use of a

---

[26]*Id.* at 2798

[27]*See Seegmiller v. LaVerkin City*, 528 F.3d 762, 771 (10th Cir. 2008) ("If a fundamental right were at stake, only heightened scrutiny would have been appropriate"); *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) ("[W]e will . . . apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution.").

[28]*Heller*, 128 S.Ct. at 2797 ("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right."); *id.* at 2821 ("The Second Amendment . . . [l]ike the First, . . . surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."); *id.* at 2817 n.27 ("Obviously, the [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms.").

[29]*Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) ("To survive strict scrutiny, [the government] has the burden of proving that its ban . . . is narrowly tailored to serve a compelling state interest.").

deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."

The government cites to a number of cases which, the government argues, support the constitutionality of § 922(g)(9). For example, the Seventh Circuit, in *Gillespie v. City of Indianapolis*,[30] upheld § 922(g)(9), but did not conduct an independent application of strict scrutiny to § 922(g)(9), nor would it have thought it necessary to do so, as the case was decided eight years prior to *Heller*. The government also cites *United States v. Miles*[31] for a blanket statement that § 922(g)(9) and a related subsection, § 922(g)(8),[32] "easily survive strict scrutiny."[33]

---

[30]185 F.3d 693 (7th Cir. 2000).

[31]238 F. Supp. 2d 297 (D. Me. 2002).

[32]18 U.S.C. § 922(g)(8) prohibits possession of a firearm by anyone "who is subject to a court order that – (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."

[33]*Miles*, 238 F. Supp. 2d at 303.

9

The Court's analysis of these cases, along with the other cases cited by the government,[34] indicates that, while helpful in establishing certain general principles, none of the prior cases have applied strict scrutiny in a rigorous manner to § 922(g)(9), especially not in an as-applied challenge with facts similar to that presented to the Court in the present action.

The Court is aware of the *Heller* Court's declaration that "[a] constitutional guarantee subject to . . . judges' assessments of its usefulness is no constitutional guarantee at all,"[35] as well as the fact that the *Heller* Court declared the prohibition on possession by felons to be presumptively lawful.[36] However, the Court is also aware that the *Heller* Court declined to elaborate on the exact rationale for that presumption, and that a presumption of lawfulness does not preclude an as-applied challenge.[37]  Because it is possible for § 922(g)(9) to be applied in a manner that impermissibly denies an individual defendant's right to keep and bear arms, the Court will address whether Defendant's as-applied challenge raises that prospect.

---

[34]*United States v. White*, 2008 WL 3211298 (S.D. Ala. Aug. 6, 2008) (finding that no court had ever found provisions of 18 U.S.C. § 922(g) to be unconstitutional, although without differentiating between § 922(g)(9) and other subsections, and that if prohibitions on possession by felons are presumptively lawful, then prohibition on possession by domestic violence misdemenanant are also presumptively lawful); *United States v. Chester*, 2008 WL 4534210, *2 (S.D. W. Va. Oct. 7, 2008) (holding that § 922(g)(9) "is a lawful exercise by the government of its regulatory authority notwithstanding the Second Amendment"); *United States v. Booker*, 570 F. Supp. 2d 161, 163-64 (D. Me. 2008) (holding that the "definitional" net cast by § 922(g)(9) is narrower than that cast by the prohibition on possession by felons, which was held to be presumptively lawful by the *Heller* Court).

[35]*Heller*, 128 S.Ct. at 2821.

[36]*Id.* at 2817 n.26.

[37]Notably, the *Heller* Court did not declare the presumption of lawfulness to be irrebuttable.

1.     *Compelling Government Interest*

The United States Supreme Court has stated that the purpose of § 922(g)(9) is to keep firearms out of the hands of those who are "presumptively risky."[38]  Black's Law Dictionary defines risk as "the chance of injury, damage, or loss; danger or hazard."[39]  The plain meaning of the word indicates a prospective view, for a past chance of injury, damage, or loss which has since been extinguished poses no threat to anyone.  The Court, therefore, finds that the compelling government interest being furthered by § 922(g)(9) is the protection of domestic partners and children from firearms violence by keeping firearms out of the hands of those who pose a prospective risk of violence.  Moreover, weighing the interests of the innocent against the fundamental rights guaranteed the accused by the Second Amendment, the risk must be more than *de minimis*.

This government interest has been impliedly recognized by the Tenth Circuit.[40]  The Tenth Circuit has stated that the intent of § 922(g)(9) was to close a "dangerous loophole," where those "who threaten their own families, people who show they cannot control themselves and are prone to fits of violent rage, directed, unbelievably enough, against their own loved ones."[41]  At the time that Congress was considering passage of § 922(g)(9), many of these individuals were not convicted of felonies, due to the vagaries of state law governing domestic violence, so these individuals were

---

[38]*Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983).

[39]Black's Law Dictionary 1328 (7th ed. 1999).

[40]*Hays*, 526 F.3d at 679-80

[41]*Hays*, 526 F.3d at 680 (quoting 142 Cong. Rec. S8831-06 (1996) (Statement of Sen. Lautenberg)).  *See also id.* at 679-80 (referencing language during Congressional debate regarding the intent of the legislation to reach "people who engage in *serious* spousal or child abuse, those who commit *family* violence, and people who show they cannot control themselves *and are prone to fits of violent rage*.") (emphasis in original).

not, at the time, all covered by the general prohibition of possession by convicted felons.  Not every individual convicted of a domestic violence misdemeanor fits within the classification described in the legislative history, in that not all domestic violence misdemeanants have shown they cannot control themselves or are prone to fits of violent rage.  However, § 922(g)(9) was intended to extend the prohibition on possession to domestic violence misdemeanants in order to assure that those who do pose that sort of risk to intimate partners or children would be protected.

Under rational basis scrutiny, it might be acceptable that achieving legislative goals of protecting the innocent from those who "are prone to fits of violent rage" also leads to some who pose no prospective risk being deprived of their Second Amendment Rights.  However, under strict scrutiny, an avenue must be left open for the protection of Second Amendment rights in cases where there is no prospective risk of violence.

2.    *Narrowly Tailored*

The government argues that the Second Amendment is subject to reasonable restrictions and that § 922(g)(9) is a "reasonable, narrowly tailored restriction on an individual's right to possess firearms."[42]  This is an understatement of the burden born by the government, for strict scrutiny requires that a constitutional infringement be justified "only if it is *narrowly tailored* to achieve a compelling state interest."[43]  It is not clear whether the government is proposing something similar

---

[42]Docket No. 19 at 6.

[43]*Colorado Christian University v. Weaver*, 534 F.3d 1245, 1266 (10th Cir. 2008) (emphasis added).  *See also Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) ("To survive strict scrutiny, [the government] has the burden of proving that its ban . . . is narrowly tailored to serve a compelling state interest.").

to the "interest-balancing" approach suggested by Justice Breyer in *Heller*, but to the extent that the government is suggesting such a test, it has already been rejected by the *Heller* Court.[44]

Summarizing the text of § 922(g)(9) and § 921(a)(33)(A), an individual may be prohibited from possessing a firearm if they have been convicted of a state, federal, or tribal misdemeanor crime of domestic violence which includes, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. The government cites the legislative history of § 922(g)(9) for its language describing the risk of an abuser escalating the violence until the victim is killed with a firearm. However, this intent did not find itself enacted within the statutory language, and, neither the text of § 922(g)(9) nor of § 921(a)(33)(A) requires a prospective risk of violence, but extend to all those convicted of domestic violence misdemeanors.

The Tenth Circuit has further narrowed the scope of § 922(g)(9). In *United States v. Hays*,[45] the Tenth Circuit noted that "neither § 922(g)(9) nor § 921(a)(33)(A) defines the term physical force," and held that "physical force means more than mere physical contact; that some degree of power or violence must be present in that contact to constitute physical force."[46] The Tenth Circuit then vacated a conviction under § 922(g)(9) because it was based on a Wyoming misdemeanor battery statute which required that the defendant either "unlawfully touch[] another in a rude, insolent or angry manner" or "intentionally, knowingly or recklessly cause[] bodily injury to another."[47] Because there was no evidence that the defendant had done any more than touch another

---

[44]*Heller*, 128 S.Ct. at 2821.

[45]526 F.3d 674 (10th Cir. 2008).

[46]*Id.* at 677.

[47]Wyo. Stat. Ann. § 6-2-501(b).

individual in a rude, insolent or angry manner, the Tenth Circuit held that the requirement of physical force had not been met.[48]

As narrowed by the Tenth Circuit, § 922(g)(9) requires that the defendant have been convicted of using or attempting to use physical force or threatening to use deadly force against present and past domestic partners and children, and various safeguards are established to assure due process.  The Tenth Circuit has further narrowed the scope of § 922(g)(9) by clarifying what qualifies as physical force.  The Court finds that Congress and the Tenth Circuit have sufficiently narrowed the scope of § 922(g)(9)'s deprivation of Second Amendment rights, so that it may be presumed that those included within the scope of § 922(g)(9) pose a prospective risk of violence to an intimate partner or child.  The Court therefore finds that § 922(g)(9) is narrowly tailored and, therefore, presumptively lawful.

Defendant, however, argues that, even though he was convicted of the underlying offense, § 922(g)(9) is unconstitutional as applied to Defendant because it does not contain exceptions for possession at home, for home defense.  The right to keep and bear arms under the Second Amendment is a fundamental right, so the Court must determine whether an exception to § 922(g)(9) must be allowed for home defense, under the narrow facts of this case.  The Court concludes that no such exception is constitutionally required.

Defendant concedes, for the purposes of this Motion, that he is a person otherwise covered by 18 U.S.C. § 922(g)(9), and the undisputed facts establish that his possession of a firearm, in violation of § 922(g)(9), came to the attention of the government subsequent to a domestic disturbance in which he used pepper spray on the Girlfriend.  While it is troubling to the Court that

---

[48]*Hays*, 526 F.3d at 679.

14

§ 922(g)(9) may be used to deprive otherwise law-abiding citizens, who pose no prospective risk of violence, of their Second Amendment rights as a result of a single past transgression, the Court cannot say, as a matter of law, that Defendant poses no prospective risk of violence, and that he is constitutionally entitled to an exception to § 922(g)(9).

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss Indictment (Docket No. 17) is DENIED.

DATED   April 10, 2009.

BY THE COURT:

TED STEWART
United States District Judge

15