IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICK ENGSTRUM,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR DOMESTIC VIOLENCE CONVICTION<br><br><br>Case No. 2:08-CR-430 TS |

I. Introduction

Defendant is charged with one count of Possession of a Firearm following a Domestic Violence Conviction under 18 U.S.C. § 922(g)(9). Federal law provides that a person shall not be considered to have been convicted of a "misdemeanor crime of domestic violence" unless, among other things, "the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case."[1] Defendant moves to exclude the evidence of his two prior misdemeanor convictions on the

---

[1] 18 U.S.C. § 921(33)(B)(i)(I).

1

ground that they should not be considered as misdemeanor crimes of domestic violence because he was not represented by counsel in either case nor did he knowingly and intelligently waive his right to counsel in either case.  The Court finds Defendant was not represented by counsel, nor was there a knowing and intelligent waiver, and therefore, grants the Motion in Limine.

## II.  FINDINGS OF FACT

On August 30, 2006, Defendant appeared at the Midvale City Justice Court for an arraignment.  As instructed, he appeared at the Justice Court Clerk's window.  The Justice Court Clerk's employee (the Clerk) handed him two documents, told him to fill them out, date and sign them.  The documents were an Acknowledgment of Rights, Enhancement, and Waiver of Rights (Ex. 4) and an Arraignment and Constitutional Rights Sheet (Ex. 3).

The Constitutional Rights Sheet explained that if the person did not request counsel "*after the Judge has explained your rights to counsel*, counsel will be waived."[2]  It also stated the person should inform the clerk or the judge if counsel was sought and buried in the text, also stated that by signing the document the party they were waiving counsel, but that, "at any time during the pendency of this matter [they] may withdraw [their] waiver."[3]

On Exhibit 4, the Clerk circled the two options listed at paragraph 3 and directed Defendant to check one of the two.   Paragraph 3 provides as follows:

---

[2]Ex. 3, at ¶ 1 (emphasis added).

[3]*Id*. at ¶ 7.

> 3. I understand that I have the right to be represented by an attorney in this matter and that if I am found to be indigent the court could appoint an attorney for me.
>
> > :__:   I understand that by proceeding without an attorney, I am waiving my right to counsel.
> >
> > :__:   I am present with the aid of counsel _____.[4]

Defendant filled out and signed the two forms, but did not check either option under paragraph 3 and returned to the Clerk's window. Defendant was confused as to what to do regarding the options listed in paragraph 3, and asked the Clerk if he needed an attorney that day. The Clerk responded "no" and said that if he did not have an attorney he had to check the top box. The Clerk provided no explanation of what he was waiving. Defendant did not understand that the Midvale Justice Court Judge would consider that by checking the box he had waived his right to counsel for all phases of the case. If that had been explained to him, he would not have checked the box or signed either document. He was required to fill out, sign, and date both forms before being allowed in the courtroom.

Defendant and others then waited to go into the courtroom. Eventually, the courtroom was opened. Defendant and the others entered and waited until their names were called.

When Defendant's name was called by the Justice Court Judge (the Judge), he went to the podium for his arraignment. The Judge informed him of what he was being charged with and asked him if he plead guilty or not guilty. Defendant responded that he plead not guilty. During the arraignment, the Judge did not inform Defendant of his right

---

[4] Ex. 4, ¶ 3.

to counsel, that if he could not afford one, one would be appointed for him, that he had the right to a speedy trial, or the right to a jury trial.  The Judge did not ask him if he wanted a jury trial.

Two other individuals who appeared for arraignment on August 30, 2006 at the same time as Defendant, had substantially the same experience.  They were presented with a form and told to fill it out, and return it.  They filled it out and returned it before they were allowed in the courtroom.  Once in the courtroom, they were not informed, individually or as a group, of their constitutional rights.  Instead, as each person was called to the podium, the Judge read them the charge(s) against them and asked them if they pleaded guilty or not guilty.  On November 14, 2006, Defendant arrived at the Midvale Justice Court for another arraignment.  He was given the same two documents as he was given before.  He signed and dated them.  Based on the instructions he had been given by the clerk on August 30, 2006, he checked the first line under Ex. 4's paragraph 3 because he did not have an attorney with him.  Again, he did not understand, and was not informed, that by checking that box he was waiving the right to counsel for the entire case.  Again, he was required to fill out, sign, and return both forms before he was allowed in the courtroom.

When he was allowed in the courtroom, the arraignment was before the same Judge as his August 30, 2006 arraignment.  As had occurred before, Defendant was not informed, either individually or with the rest of the defendants, of his right to counsel, that one would be appointed for him if he could not afford one, or that he had a right to jury trial.

Defendant pleaded not guilty and his second case was set for a bench trial together with his earlier charge.

In each case, a Minutes of the Arraignment was prepared using a computer and was signed by the Judge and the Defendant. Both Minutes contain errors such as saying Defendant waived the time for a sentence. They are also incorrect in that they imply that that Defendant was advised of his rights and waived his right to counsel during the arraignments. The Minutes also set each case for a bench trial when the right to demand a jury trial had not been discussed.

The Judge and the Midvale Justice Court Administrator testified in this case as to their general policies and practices in 2006. However, neither could recall the specific events in question in this case. Whatever may have been the Judge's practice on other occasions, the Court finds that on August 30, 2006, and November 14, 2006, Defendant was not informed by the Judge of his right to an attorney, his right to have an attorney appointed for him if he could not afford one, or of his right to a jury trial. Similarly, whatever the Clerk's practice might have been on other occasions, Defendant was not informed by the Clerk on August 30, 2006 or November 14, 2006, that he could have had either the documents, or the rights referred to in the documents, explained by the Judge.

Defendant appeared again in the Midvale Justice Court on March 2, 2007 on the next scheduled date for his two cases. He did not understand that it was to be the actual trial for the two cases. When he realized it was the trial, he asked for an attorney but was told that it was too late. Defendant was found guilty in both cases after a bench trial.

Defendant did not appeal either conviction. It is these two convictions that Defendant seeks to exclude from evidence in this case.

Because Utah Justice Courts are not "of record," actual transcripts of the arraignments or the bench trial are not available.

Each Acknowledgment of Rights, Enhancement, and Waiver of Rights that Defendant signed prior to his Midvale arraignments on August 30 and November 14, 2006,[5] state that prior to entering a plea the individual was informed of his constitutional rights "by the court" and was informed of the elements of the offense and the possible penalties. However, the Court finds that Defendant and the other two witnesses who were arraigned in the Midvale Justice Court were required to sign, date, and return the document to the Clerk before he or she was allowed to appear before the Judge to be told of the charge, the elements, and the possible penalties. Thus, Defendant was required to make a decision on waiving his right to counsel before he was allowed to appear at his arraignment and without understanding the rights he was waiving or that such a waiver was for the entire case.

Prior to August 30, 2006, Defendant had been involved in several other court cases in other jurisdictions. In each of those cases he was informed of his right to counsel and of his right to have counsel appointed if he could not afford counsel by the officiating judge at the arraignment. In one of those cases, again in Midvale, Defendant decided to proceed without counsel because he had determined to pay the fine. In another, he decided he did

---

[5]Exs. 4 and 10.

6

not need counsel. However, in his other cases, when informed of his right to counsel, he did obtain counsel, including appointed counsel.

### III. Discussion

As noted above, Defendant is charged under 18 U.S.C. § 922(g)(9) with unlawful possession of a firearm by a person convicted of a misdemeanor crime of domestic violence. A misdemeanor crime of domestic violence for the purposes of §922(g)(9) is defined at 18 U.S.C. § 921(a)(33). Subsection (A) of § 921(a)(33) defines what is a misdemeanor crime of domestic violence. Subsection (B) provides a list of several circumstances where, despite a conviction that would otherwise be a misdemeanor crime of domestic violence under subsection (A), a "person shall not be considered to have been convicted of such an offense." Only the following of those several circumstances is at issue in this case:

> (B)(i) A person shall not be considered to have been convicted of such an offense for the purpose of this chapter, unless—
>
> > (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; . . ."[6]

The parties disagree on the standard to be applied in determining whether the waiver was knowing and intelligent. Defendant argues that by using the words "knowing and intelligent," Congress intended to use the phrase "as a shorthand encapsulation of the

---

[6] 18 U.S.C. § 921(a)(33)(B)(i)(I).

federal constitutional standard" for waiver of counsel.[7] The government disagrees and argues that a different standard applies under the statute than the constitutional standard.

In support of its position the government relies on *Lewis v. United States*.[8] The Court does not find *Lewis* to be controlling on the issue of the determination of the correct standard for construing § 921(33)(B)(i)(I).

In *Lewis* the Supreme Court held that although under the Sixth Amendment an uncounseled felony conviction cannot be used for certain purposes, such a conviction "could be used as the basis for imposing a civil firearms disability, enforceable by a criminal sanction."[9] However, in making that ruling, the Court in *Lewis* also noted the following when construing the statute at issue in that case:[10]

> An examination of § 1202(a)(1) reveals that its proscription is directed unambiguously at any person who "has been convicted by a court of the United States or of a State . . . of a felony." <u>No modifier is present, and nothing suggests any restriction on the scope of the term "convicted."</u> "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]."

\* \* \*

---

[7] *United States v. Frechette*, 456 F.3d 1, 9 (1st Cir. 2006).

[8] 445 U.S. 55 (1980).

[9] *Id*. at 67.

[10] 18 U.S.C. App. § 1202(a)(1). As explained in *United States v. Rummey*, 979 F.2d 265, 266 (1st Cir. 1992), "[e]ffective November 15, 1986, 18 U.S.C. app. § 1202(a), was repealed and reenacted. The statute's felon-in-possession provisions were incorporated into 18 U.S.C. § 922(g) . . . ." Section 1202(a)(1) provided "any person who (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . who receives, possesses, . . any firearm shall be fined . .  or imprisoned . . ."

> On its face, therefore, § 1202(a)(1) contains nothing by way of restrictive language. It thus stands in contrast with other federal statutes that explicitly permit a defendant to challenge, by way of defense, the validity or constitutionality of the predicate felony.[11]

Unlike the statute at issue in *Lewis*, the statute at issue in this case has several modifiers and there are several restrictions on the word "convicted" in §922(a)(9). First, the meaning of a conviction under § 922(g)(9) is modified by the requirement under subsection (A) of § 921(33), of an element of physical force, etc. Then it is subject to the several conditions set forth in subsection (B) of § 921(33), including the one at issue in this case.

Thus, the Court does not look to merely the fact of a conviction, but also to whether that conviction is subject to one or more of the several conditions. The Court finds that by using the phrase "knowingly and intelligently," that Congress intended that the Sixth Amendment standard apply to the condition it imposed in § 921(33)(B)(i)(1).

Thus, the issue is not whether or not the underlying conviction is invalid but whether or not the Defendant knowingly and intelligently waived his right to counsel in the case in which the predicate conviction was rendered. There may be a valid conviction that is, nonetheless, not to be considered a misdemeanor crime of domestic violence under the federal firearms statutes.

Thus, the Court looks to case law to determine if Defendant knowingly and intelligently waived his right to counsel in his two Midvale cases.

---

[11]*Id*. at 60, 62 (emphasis added).

> In determining this issue, we look to the record and the entire circumstances of the case, including the defendant's age and education, the defendant's trials, and the defendant's background, experience, and conduct. The Supreme Court has stated the trial judge "can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." The record should establish the defendant had a sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed pro se.[12]

The Court has considered all of these factors in making its findings above. The government argues that Defendant's past conduct and experience with the criminal justice system support a finding of knowing and intelligent waiver. However, the Court finds that Defendant's previous conduct shows that when he is adequately informed of his right to have appointed counsel in a serious matter that he intends to contest, that he exercises that right. On the peculiar circumstances of this case, Defendant and others arraigned at the same time were led to believe that they had to sign all of the documents to get before the Judge. The information they received was confusing and contradictory between what was in the documents and the manner in which they were directed to proceed by the Clerk.

---

[12] *United States v. Taylor*, 113 F.3d 1136, 1140-41 (10th Cir. 1997) (quoting *United States v. Padilla*, 819 F.2d 952, 956, 958 (10th Cir. 1987); *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1947); and *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991)).

It is clear that the Defendant did not have a sense of the "magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed pro se."[13]  At the time he signed the documents, Defendant was told he did not need an attorney that day, and he had not been informed of the charges against him or of the possible penalties.

In arguing that the waiver was knowing and intelligent, the government relies on case law that discussed the practices and procedures of sentencing courts to show knowing and intelligent waiver.[14]  However, while the Court considered such evidence in the present case, it also found, above, that such evidence was outweighed by credible evidence of the actual circumstances at the arraignments.

Based on all of the factors set forth above, the Court finds that Defendant did not knowingly and intelligently waive his right to counsel.

The government also argues that the constitutional standard should not be used in determining whether a waiver was knowing and intelligent for purposes of this case because Defendant does not have a Sixth Amendment right to counsel in his two Midvale cases because they were misdemeanors and a Defendant's right to counsel in a misdemeanor case is not triggered unless he is subject to actual imprisonment.  The Court notes that Defendant did not have an opportunity to fully brief this issue because the

---

[13] *Id.* at 1141.

[14] *E.g. United States v. Jennings,* 323 F.3d 263, 276 (4th Cir. 2003).

11

government did not timely raise this issue as an argument for why § 921(33)(B)(i)(I) should not apply at all in this case.

However, the Court need not address this argument because Defendant's convictions actually led to imprisonment for a brief period when he failed to appear for his sentencing on the two cases.

In conclusion, the Court finds and concludes that Defendant was not represented by counsel nor did he knowingly and intelligently waive his right to counsel in the two Midvale misdemeanor domestic violence cases. Accordingly, the Court finds and concludes that under § 921(33)(B)(i)(I), those convictions are not directly relevant to the offense in this case. Therefore, the Court will grant Defendant's Motion to exclude them.

## IV. Order

Based on the foregoing, it is

ORDERED that Defendant's Motion in Limine to Exclude Evidence of Prior Domestic Violence Conviction (Docket No. 70) is GRANTED.

DATED   January 8, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge